May it please the Court, my name is Eric Bonette and I'm here representing defendant appellant Bruce Humphrey. Your Honors, I've got four different reasons why this case should be at least partially reversed and vacated. And I think they all fit together and make a major, you know, I guess due process problem. My client was a suspect in a major crime. He was suspected of a murder. Never charged with that, but he was suspected of it. The police then spot his vehicle. They follow it around for quite some time. He wasn't even in the vehicle when they started. Finally, they find, you know, he does get in the vehicle and they find an opportunity to pull him over. Police officer claims to have seen a gun when he does that. Well, they didn't pull him over. Well, stops the car and tells him to get out, or I guess the car was stopped at that point, but orders him out of the car. He pulled up to the first police car and then he was blocked in. True, but the other car pulled in behind him then. Right. The second car blocked him when he pulled so close to the first parked police car that you could block him. If he had left a car length between himself and the first police car, he wouldn't have been blocked, right? Just common sense. He might have been stopped, but he wouldn't have been blocked. Well, that's probably true, but when the sirens go on behind you, I'm not sure that it... When did the siren go on? I thought not until the second car had... Well, when the second car... Blocked him. Right. I mean... I think he could have pulled out. This is a self-inflicted wound to a large extent. You know, he reacted, he responded... Aggressively. Right. After they had been following him for his car for quite some time. But after they were clearly no longer following him. He may or may not have known that, but... Well, but I thought the first car pulled into a cross street and then pulled into a parking lot. So he had to make a right turn and then go past and all the way around in order to block the first car? Have I got the facts wrong? I think that's correct. Okay. I mean, you still had the issue, but... Yeah, I mean, it's still... The basic point, though, is that they followed him for quite a while until they had an opportunity. I mean, probably if he had run a red light or gone five miles over the speed limit or something like that, they would have probably pulled him over for something like that. So, you know, trial, you get a swearing match with the police. He finds a witness who says that he watched the search and didn't see a gun come out of the car, but the motion to continue to allow that witness to testify was denied. They gave a partial continuance, but it ended up not being enough to get the guy subpoenaed. And he ends up getting a sentence that was more than four times what he had received for the underlying felonies. Looking at the individual issues, the continuance, this court has set out the five factors that are supposed to be considered when a continuance is requested. You know, you look at the transcript and it was, you know, the only thing that was considered was, well, gee, I don't have space on my schedule. Okay, eventually there would have been space on the schedule. And they made, you know, the judge makes a partial accommodation, which might have worked if the guy had, you know, come back and, you know, been amenable to coming, but instead it's, you know, the guy was out of state, he comes back, the lawyer contacts him over the weekend, says, we need you here Monday morning, and the guy has, you know, other business to attend to. You know, when you give someone a few weeks, say, I need you here, you know, three weeks from now on Monday, people can adjust their schedules. When you call them on Saturday and say, I need you, you know, Monday, that's a bit tougher to do. Well, the court may be having trouble adjusting its schedule. What was that? The court may be having trouble adjusting its schedule. I suppose it, I mean, the judge, that was the judge's reasoning, but I think that's supposed to be secondary to, you know, issues of how important is this witness, is there going to be prejudice to either side. Well, how confident could you be, or could your client be, that that witness was actually going to come justify? Because we know many of them are reluctant. Well, they were. He had, you know, at the pretrial conference, you know, I wasn't the attorney in the trial court, but the, you know, my predecessor told the judge that he had, you know, contacted the witness, I think, the day before. The witness was willing to testify, but was going to be out of state the week of the trial. You know, but was willing to testify. The story when he, you know, when they did, you know, gave the partial continuance to the following Monday was that the witness had, you know, come back, but had other business, and was, you know, avoided, you know, the one effort to issue a subpoena, you know, over the weekend. You know, had there been. What's the ruling that you say was error? Well, the ruling was denying the continuance. What motion to continue are you referring to? The motion to continue that was, I believe, was filed either the day before the final hearing or maybe at the final hearing. There were two continuance rulings. I think Judge Collins is asking which one are you challenging? I'm not quite clear what your. The first time she granted a, what you would call a partial ruling or a partial continuance. Second time she denied a second continuance. Well, is that true? Did she deny a second continuance? Well, I think that, I don't think there was really a second motion to continue. Right. Well, that was the point of my question. I thought that there was the first discussion of this before the weekend. The judge said, we'll put this off until Monday so you can get your witness who's out of town this week. And then Monday came and I didn't understand your client to have moved for a further continuance. Well, I think the. Was there a motion for continuance on Monday? No, there was not. All right. There was, I think, an expression on Friday or Thursday, whatever, the pretrial conference that concerned that the court solution was not going to be adequate. But at that point it wasn't known. There was a chance that it was going to work, but it was not granted the way that, to the extent that the attorney requested. What did the attorney request? He requested that the trial be rescheduled to a future time, which would have been weeks or months later. So you're saying it was air for the judge at the hearing before the weekend not to continue the trial until weeks or months later. That's the argument? Right.  I understand the argument. Another, I think, key issue is, which also is based in large part on lack of findings, is the enhancement that was based on using the firearm in connection with another crime, that being drugs. The key here in all these cases is that there weren't any, is that the wrong standard was used. Certainly there was evidence that could have been argued either way on that. But all the cases, I don't think this court has ever actually reversed and said this enhancement is clearly inappropriate. They've always remanded for application of the correct standard. In this case, the . . . What do we do when there's no objection then? Is it a . . . Well, in this case, my client did raise an objection that he didn't think it should be applied because he wasn't charged with that. The judge actually stated the standard that would be applicable to dealer quantity drugs, not the one that would be applicable to user quantity drugs. It certainly would be better if the attorney had objected and filed a brief and so forth. But my client did himself raise the question of the appropriateness of this enhancement. Was he pro se at sentencing? No, he was not. The attorney was there. But the attorney was silent on this issue, or was the attorney that said . . . Yeah, the attorney did not raise objections to this issue, but the client did. Well, wasn't the client's objection just that he hadn't been convicted of a drug offense? That was the basis for it. Did the client object that the gun was not used in connection with the drug offense? No, Your Honor. All right. So, if there's no objection to that point, then how does the analysis work? Is it plain error, reversible if the judge doesn't make the specific finding you're concerned about? Or do we just look at whether the evidence supports the adjustment? Well, I think one key here is that the judge actually stated the wrong standard in response to the client's objection. Wait a minute. He stated the Bates II standard, right? He stated the standard correctly if there was user quantity seized, but the evidence supported a dealer situation. Let's see. He said, I've got a quote in my brief, The guideline allows for four-level enhancement if you possess the firearm in connection with another felony offense, and that other felony offense had to do with the possession of cocaine base. As you will recall, there was testimony at trial that there was a quantity of cocaine base that was found in the car at the time you were arrested, and the handgun was found. So that's why the four levels apply. It's just the proximity, which is enough if it had been a dealer quantity of drugs, but this was a user quantity. Well, but it was packaged in a way that arguably supports an inference intent to distribute. Isn't that right? That's something that could have been argued, but it wasn't, and I'm sure would have been if the objection had been raised. Yeah. Although I think the quantity should be the key as well, because. But in Bates 2, I mean, you're just saying Bates 2 was wrong, because we remanded in Bates 1, and then we affirmed in Bates 2 on the grounds that although it was an apparent user amount, the evidence showed it was, in fact, a trafficking situation, right? Yeah, that's true. Okay, so that potential is implicit here. And I believe I'm noticing them way beyond where I said I was going to reserve time. Isn't that the problem with no objection? It is, but then you've also got the wrong standard being applied. No, not if the facts, not if a preponderance would show it was trafficking based on the packaging and whatever else. I'd like to reserve the rest of my time for rebuttal. Mr. McCain? Good morning. I'm Tom Meehan. I was the trial attorney in this matter, the brief written by Allison Behrens of our office. As to the first issue of the stop, it's interesting that the stop was caused by the defendant. And when I say that, as the roving surveillance, rolling surveillance of his vehicle, police officers, the testimony at trial was that there were two females in the car that was associated to a suspect that was involved in a homicide. They had information that there was a retaliatory hit for that homicide, and the homicide was in retaliation for the shoot-up of his house that was full of drugs and money. So when the police officers were following the car, they testified that they followed the car to a new location, the house up in North County, because they said, we're looking at this guy, we're checking this guy out. Now he takes us to a whole new house. So this furthered their investigation. And as the rolling surveillance went on for a period of time, there's no violation of anyone's constitutional rights at that point. Nor is it challenged. Right. This is all in the briefs. Right. So as they approached, as the court pointed out, as they approached, when they disengaged, when the police disengaged the surveillance in the parking lot, they got on the road and started driving away. The defendant came up behind them, drove next to them, pointed his hand at them, and the officer behind in the car behind said, I didn't see what he had in his hand, but he lifted his hand and pointed at the officers. He immediately told the officers to disengage again. They did so, pulled into the parking lot. That's when the defendant shot forward, cut through traffic, came in at a different entrance in the parking lot, and went toe-to-toe, head-to-head in the car, so the police car could not move. That's when the follow-up police car came behind and approached. We're dealing with a specific officer safety issue at this point. Because as the officer in the second car got out and approached the car, he said, defendant said, I know you've been following my gal since this city. I thought you were going to rob me. As he approached the car, that's when through the window he saw the gun and the dope on the ground. So at that point, the whole rolling surveillance turned into an officer safety confronted by the defendant's actions, by him confronting the police officers after they disengaged twice. So factually, that is very important in what is the Terry stop at that point when the officer just approached, the defendant who voluntarily stopped the car on his own. I want to move now to the request. What about his argument that the police, in effect, generated the reasonable suspicion by following him around and causing him to fear for his safety? That kind of throws into his argument that maybe I had the gun for my own protection of Rob. That argument came up in the brief as a possible reason why he had the gun, because of the threats that he might have perceived of him. The police officers can follow anybody anytime they want. They disengaged, so they didn't cause it when they disengaged twice on the rolling surveillance. He did it in a violent nature when he pulled the car up and was looking right at the police officers over the hood, over their hood, into their car. To the continuance, if I may. The defendant in October asked for a continuance because a witness had surgery. That was granted. The Friday before trial, he filed this motion, the motion under consideration to continue because KT was going to be out of town. He filed that on Thursday, on Saturday or Friday. The court heard that hearing, heard that matter on Monday morning of trial. The defendant specifically stated, I talked to KT on Thursday, and he said he'd be willing to come to court, but he's leaving town today. So Thursday, Friday, Saturday, Sunday, Monday, he was not served, even though they were talking on the phone, and supposedly he was willing to come in and testify favorably for him. But he was not served. On Monday morning, when he asked for the continuance, what he asked for was, I want this witness to be able to testify when he gets back in town. When did he get back in town? Initially, the defense attorney said Thursday, then he said Friday, and then on Monday, the following Monday, which was December 10th, is when we finished up the trial. The court wanted, said, my calendar's tough. I understand that. But the court said, what do you want? He said, I want KT to testify when he gets back in town. So solely to accommodate KT's schedule, the court then, it's discussed on page 271, 272 of the transcript, where the court, I was arguing, we're going to stop this trial on Tuesday, wait, do nothing Wednesday, nothing Thursday, nothing Friday, and come back for this one witness on the following Monday. And the court said yes. On page 272 of the transcript, the court said, the only reason I'm carrying this over to Monday is to accommodate Mr. Tyler. Mr. Cetilli then says, right, that's all I asked. So all he wanted was the following Monday. He just said this morning there was no second ruling being challenged. The only challenge on appeal, the only issue on appeal is the initial ruling. Yes, which the court asked is this ruling. So as to which whatever happened thereafter is essentially irrelevant, if not completely irrelevant, right? Okay. How could it be relevant? Well, because he got what he asked for. He said the original answer continues. Therefore, it doesn't matter what happened thereafter. Okay. If that's a good defense to the first ruling. Well, what you were just recounting there, was that your view of the first ruling? The first ruling was I'm going to give you what you want and what you're asking for. Until next Monday. I'll give you until next Monday when the guy gets back in town on Friday. You're saying the lawyer said that's all I asked. That's all I asked for. I want this thing rolled over to when this witness is in town. Because as you asked, I believe, Judge Caldwell, that there was no on the next Monday, defendant testified, nothing then happened. That's where there was no second motion. Right. There was no second. No one even asked a question about where KT was until after the jury went out to deliberate. That's when the court asked Mr. Sotilli, and he responded. He told the court that, Your Honor, I spoke with him by phone over the weekend. The investigator spoke with him over the weekend. He indicated he did not want him to come to court. He had important business. And that's all stated after we all rested. When the court said, well, whatever happened. We continue the case at your request to Monday to accommodate this guy. Where is he? And that's when Sotilli said he still won't come in. And so all I'm saying is that he accepted the fact that the court gave him what he wanted was the opportunity for the Monday when the guy was back in town. But he still didn't want to come to court to testify. As to the lack of findings on the- situation as of when the continuance was requested. I don't have the calculation on how many days had run, Judge, but there were motions pending. And I believe right before the trial is when Judge Jackson adopted the R&R of the magistrate. So I don't think any time- When did the clock start? How much before the trial? A long time before the trial because he lost his attorney. So there are speedy trial considerations here. Could have been, but we never addressed that. Obviously, it's excludable if it's the defendant's motion. But the court's supposed to be concerned about speedy trials just in general, right? Right, and that's why in October when the court granted the first continuance, when the witness had surgery, who never showed up to court anyway. They couldn't subpoena her anyway. Either, rather. And that's why most of this was all a defense request because he asked for a new lawyer and he had a fellow defender, and then he got Mr. Satilli. And then the request for continuances, and the second request, the court was concerned that it was time to move the case along. What do you want? I want until Monday so the witness can show up. We'll be back in town, we'll be served, and then we can go to trial. As to the four-level enhancement, I think the court had the right ruling because there was no objection. During the trial, I asked Bergdorf if this was a distribution amount of crack cocaine. He said yes. There was an objection to that. Judge Jackson ruled that it was irrelevant whether it was a distribution amount or a large user amount to the issues at hand. So the trial moved on. But it's the government's position that there's enough from the record to show that this defendant on his lap had a gun and the bags that had 14 individual bags of crack cocaine. About 2.41 grams of crack cocaine is what the stipulation was during the trial. That's 240 hits of crack cocaine. It's usually about 10 hits per gram. This was a distribution amount by history. As Bates said, you can take into consideration the defendant's past conviction for distributing a user quantity as evidence of motive, intent, or knowledge as to what he planned to do with the drugs. Well, let me ask you this, though. As I understood the argument from the appellant here, he's focused on what Judge Jackson said when she explained why she was applying the four-level adjustment. And when she did that, she said the other felony offense had to do with the possession of cocaine base. So I think the submission is she based it on a simple possession felony offense, although maybe you're right that the evidence could have supported the other inference. She didn't make that inference. She, on page 7, line 18, was referring to possession of cocaine base, and he's saying if that's the other offense, then our cases require the specific finding of facilitation, which wasn't made. What do you say to that? Well, Judge Jackson used the word possession, didn't use the word distribution, because by no objection, that was not a dispute. What was not in dispute? The fact of whether the four levels should be included for the distribution, for the facilitation of the distribution. When it was included, when the testimony at trial, as I said, was, is it a distribution amount? Yes. Objection. 240 hits, 14 individual packages. His prior was for the distribution of $20 of marijuana. You can distribute a user amount, a very small amount. He had a very large amount of cocaine base crack. So since the defendant didn't say four versus two, the court responded, his only objection was I was in charge of this. The question is about the sentencing transcript, not the trial transcript. Well, the question is what information did the court have to the objection to be able to make that finding. The court didn't have an objection that it doesn't apply because it's not a distribution amount. That isn't what the objection was. The four-level increase in the PSR was without objection, so no evidence was presented to separate those two issues. The point is that when the trial court states it as one kind of offense, shouldn't the court make the – doesn't the court have to make the finding that accompanies that offense? I truly do not think that judge – He hadn't responded to that. I truly don't think that judge separated that out and specifically said, I'm giving you four points, but I'm saying it's on a different basis. The court's terminology, judge, was just such that it's the possession. She didn't add the words with intent to distribute because that was assumed in the four-level increase without objection. Well, wait a minute. That wouldn't be true maybe if the pre-sentence report, to which there was no objection, had referred to distribution, but as I read the PSR, it says the firearm had paragraph 18, page 5, also refers to possession. Now, you might argue the PSR says the firearm facilitated the possession and there was no objection to that, so that's the equivalent of a finding of facilitation. I can understand that argument. But the PSR doesn't say distribution. You're right. It did not. So why is it that you say there was no objection so she didn't have to say anything about distribution? It's not in the PSR to which there was no objection. The PSR, page 5, paragraph 18, refers to the specific section of the guidelines that gives the four-level increase. And explains why the probation officer is recommending the four levels. Right. And therefore, what I'm saying is that when the court had no objection to the four-level increase, it didn't make a specific finding because there was no objection. So now we look at what the court maybe should have used the word distribution, but no one argued about it. So I didn't stand up and say, Judge, make that finding, because no one asked for it, which is his obligation to do it. What did the judgment itself say? I'm sorry? What did the judgment itself say? The judgment doesn't separate out that. My understanding of it, the judgment just says 92 months in BOP. It doesn't make that specific finding because the court adopted the PSR, which gave four levels, for the distribution without objection by defense counsel. So why isn't the PSR sufficient in that it says the gun facilitated the possession? Why doesn't that satisfy paragraph 18? I think it's sufficient because there's four levels attending to that, not two levels for possession. There's four levels. And Satili didn't object to that. We didn't have any evidence. No one asked to present any evidence on the issue of whether it was a distribution amount. No, no, I'm not talking about distribution. I'm saying, assuming it's just possession, I thought the argument here is, well, the court has to find facilitation if it's simple possession. Yes. Well, what does the PSR say on paragraph 18? All it says is, as the defendant used or possessed any firearm or ammunition in connection with another felony offense, which is the wording from the guidelines section. No, I'm talking about the parenthetical after that. The firearm facilitated or had the potential to facilitate the possession of cocaine base. Yes. Was that a finding of facilitation? It's an unobjected finding in the PSR. Okay. And that's why I said we didn't present any evidence because it states that. If the defendant said, Judge, there's no evidence that facilitated it, then I would have put on evidence of 14 baggies, the prior offense, what he was doing out there. His history is 404. We would have done all of that if he had objected to it. But it just states it facilitated that. And then if he says, well, where's your evidence to support that, Judge? Then we rock and roll on that issue. But we didn't because there was no objection to that. I'm down in red light. Anything else? Thank you. Thank you. Mr. Bowen, I'd have some time. Yes. Okay. Thank you, Your Honors. I'd like to address this issue of why wasn't there a second motion to continue on Monday? By that point, the jury had been impaneled. The prosecution had already submitted its case and rested. To get a continuance at that point, and the prosecution had objected to the judge's plan initially because it was going to split out the trial too far. To try to request continuance at that point, and presumably the judge wouldn't have been able to just schedule a jury trial the next day, I think would have been rather pointless. The problem was that it was set up really to fail because it gave a very narrow window for the . . . I think you're right. Unless defense counsel could have credibly said the witness can be here on Tuesday or Wednesday, something that didn't threaten an indefinite continuance. Otherwise, you're right. It would have been . . . That might have worked if he'd had . . . If he had the facts, he presumably would have done that. Well, if he'd been able to talk to the witness during the week when the court was open and could work it out. I thought he talked to him over the weekend. Right. If he had been able to give that assurance, I'm sure he would have. But there still needs to have been time for everything else to turn around. That's speculative, but it seems to me it's common sense. Okay. Thank you, Your Honor. Very good. Thank you, counsel. You've made the issues much clearer, and we will take it under advisement. Mr. Bonnet, you have served again under the Criminal Justice Act, and once again the court appreciates you.